IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

```
MARCUS EDWARDS,              )
                            )
      Plaintiff,            )
                            )      CIVIL ACTION NO.
      v.                    )      3:13cv871-MHT
                            )          (WO)
SHERIFF JIMMY ABBETT        )
(in his individual         )
capacity), et al.,         )
                            )
      Defendants.          )
```

OPINION

Pursuant to 42 U.S.C. § 1983, plaintiff Marcus
Edwards brought this lawsuit stemming from his
incarceration in the Tallapoosa County Jail, asserting
that the defendants violated his Eighth and Fourteenth
Amendment rights by denying him treatment for several
medical conditions.  The defendants are Tallapoosa County
Sheriff Jimmy Abbett, Jail Administrator Blake Jennings,
and Chief Nurse Cathy Dubose.  They are sued in their
individual capacities.  This court has jurisdiction
pursuant to both 28 U.S.C. § 1331 (federal question) and
§ 1343 (civil rights).  The case is now before this court

on the defendants' motion to dismiss.  For the reasons
that follow, the motion will be granted in part and denied
in part.

## I. MOTION-TO-DISMISS STANDARD

In considering a defendant's motion to dismiss, the
court accepts the plaintiff's allegations as true, *see
Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and
construes the complaint in the plaintiff's favor, *see
Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).
"The issue is not whether a plaintiff will ultimately
prevail but whether the claimant is entitled to offer
evidence to support the claims." *Scheuer v. Rhodes*, 416
U.S. 232, 236 (1974).  To survive a motion to dismiss, a
complaint need not contain "detailed factual
allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
545 (2007), "only enough facts to state a claim to relief
that is plausible on its face." *Id.* at 570.  "A claim
has facial plausibility when the plaintiff pleads factual
content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 556).

## II. BACKGROUND

Edwards's third amended complaint is far from a model pleading. Nevertheless, "accepting the facts alleged in the complaint as true and drawing all reasonable inferences therefrom in the plaintiff's favor," *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001), it sets forth the following facts.

Edwards was incarcerated in the Tallapoosa County Jail for about five and a half months in 2011. Defendant Sheriff Abbett was responsible for the administration and supervision of the Tallapoosa County Jail. Defendant Jail Administrator Jennings was also responsible for administration and supervision in the jail. Defendant

3

Chief Nurse Dubose was responsible for providing medical care to the inmates.

Before his incarceration, Edwards had been diagnosed with Major Depressive Disorder, Post-Traumatic Stress Disorder (PTSD), and Adult Attention Deficit Hyperactivity Disorder (ADHD), and was being treated with medications. He also had been diagnosed with sleep apnea and used a continuous positive airway pressure (CPAP) machine for treatment of his condition. Finally, the prior year, he had been in a serious accident and fractured his leg severely. At the time of his incarceration, he was still under medical treatment and was prescribed pain medication and physical therapy for the injured leg.

Edwards and his family repeatedly notified each of the defendants of his medical conditions and of the need for him to receive treatment for his conditions. However, he never received the prescribed treatment for his leg injury. He also never received treatment for his ADHD and PTSD. He was allowed to use his own CPAP machine

for sleep apnea, but at some before the end of his incarceration, Nurse Dubose broke the machine and did not fix or replace it, leaving his condition untreated for "weeks."   Third Amended Complaint (doc. no. 43) at 4, ¶¶ 25 & 28.

Edwards was released from jail on November 27, 2011, at 5:55 a.m.   He filed this lawsuit two years later, on November 27, 2013.   In his complaint, he sues only for the harm he suffered during the period of midnight to 5:55 a.m. on that day.   *See id.* at 1, ¶ 2; *id.* at 7, ¶¶ 43 & 44.


## III.   DISCUSSION

In his third amended complaint, Edwards brings one count for violation of the Eighth and Fourteenth Amendments by failing to provide him with adequate medical care for the above-described conditions.   The defendants move to dismiss on one ground only: qualified immunity.   *See* Motion to Dismiss (doc. no. 45) at 1.

## A. Qualified Immunity Doctrine

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand'" that the conduct violates that right, thereby giving fair and clear warning to government officials who may engage in such behavior. *Hope v. Pelzer*, 536 U.S. 730, 753 (2002) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... ; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.*

A defendant who invokes qualified immunity has the initial burden of showing that he or she "was acting within the scope of his or her discretionary authority when the challenged action occurred." *Patel v. City of Madison, Alabama*, 959 F.3d 1330, 1338 (11th Cir. 2020) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013)).[1]  There is no dispute that the defendants were acting within their discretionary authority here. Once the defendants establish that they were acting within their discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

---

1. "The term 'discretionary authority' 'include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority.'" *Patel*, 959 F.3d at 1338 (quoting *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994)).

**B.  The Eighth and Fourteenth Amendment Standard**

Edwards contends that the defendants violated his constitutional rights under the Eighth and Fourteenth Amendments by denying him the medical care prescribed for several diagnosed conditions.

While constitutional claims of denial of medical care for pretrial detainees are brought under the Fourteenth Amendment's due process clause, those for convicted prisoners are brought under the Eighth Amendment's protection against cruel and unusual punishment.  *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983).  Edwards's complaint does not make clear whether he was a pretrial detainee or was serving a sentence during his time in jail, or if he changed from one status to the other at some point.  In any case, the same standard applies to a claim for denial of medical care whether brought under the Eighth or the Fourteenth Amendment.  *See Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985) ("This court holds that in regard to providing pretrial detainees with such basic

8

necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons.").

To plead an Eighth Amendment claim for denial of medical care, a plaintiff "must sufficiently allege 'both an objectively serious medical need and that a Defendant acted with deliberate indifference to that need.'" *Harper v. Lawrence Cty., Ala.*, 592 F.3d 1227, 1234 (11th Cir. 2010) (quoting *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008)). The standard has both objective and subjective components.

A medical need is objectively 'serious' if it "has been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)). In addition, the medical need must be "one that, if left unattended, 'pos[es] a

substantial risk of serious harm.'" *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)).

To satisfy the 'deliberate indifference' requirement, a plaintiff must plead facts showing the defendant's "(1) subjective knowledge of a risk of serious harm... [and] (2) disregard of that risk ... (3) by conduct that is more than mere negligence."[2] *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (quoting *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)). "[K]nowledge of the need for medical care and intentional refusal to provide that care constitute[s] deliberate indifference." *Harris v. Coweta Cty.*, 21 F.3d 388, 393 (11th Cir. 1994).

---

2. While it makes no difference to the outcome here, the court notes that some panels of the Eleventh Circuit have described the third prong as "more than gross negligence," rather than "more than mere negligence." *See*, *e.g.*, *Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1158 (11th Cir. 2010).  *But see Melton v. Abston*, 841 F.3d 1207, 1223 n.2 (11th Cir. 2016) (explaining that the "more than mere negligence" standard appears to be the correct one).

### C. Edwards's Claims

With these precepts in mind, the court will now examine each medical need identified by Edwards in the complaint.  For the reasons discussed below, the court will grant the motion to dismiss as to the claimed denial of treatment for Edwards's mental-health conditions and sleep apnea, but will deny the motion as the denial of medical care for his leg injury.

### 1. The Leg Injury

Edwards has adequately pleaded a clearly established constitutional claim regarding the denial of treatment for his leg injury.

First, Edwards's leg injury clearly meets the definition of a serious medical need.  According to the complaint, at the time of his incarceration, he was still suffering from the effects of a severe femoral shaft fracture caused by a serious accident the year before. The fracture was serious enough to require inpatient surgery and the use of rods and screws to fuse his

shattered femur back to together.  Edwards was still under the treatment of a physician for the injury at the time of his incarceration, and the physician had prescribed pain medication and physical therapy for the condition.  Due to the lack of treatment he received in the jail, he suffered "intense pain," Third Amended Complaint (doc. no. 43) at 2, ¶ 10, and his physical condition deteriorated, *id*. at 7, ¶ 46, and the jail's own contract physician repeatedly admonished Nurse Dubose to transport Edwards to his orthopedic surgeon for treatment on his leg.

The defendants argue that Edwards's medical condition cannot be considered a serious medical need during the approximately six-hour period before he was released for which Edwards has sued for damages.  *See* Defendants' Brief in Support of Motion to Dismiss (doc. no. 46) at 10 ("[T]he Third Amended Complaint is devoid of any reference that for this narrow scope of time that is its basis, Plaintiff suffered any injury and certainly

not a serious medical condition. As a result, Plaintiff's claims should be denied").

As an initial matter, it is inaccurate to say that Edwards did not suffer from any injury during those six hours. The complaint states that Edwards suffered intense pain due to the lack of treatment for his leg injury and sleeplessness due to that pain, and that the pain was incessant. One can reasonably infer that during the nighttime hours of the day he was released, he suffered the same pain and insomnia he had suffered throughout his incarceration.

But the bigger problem with this argument is that it appears to cabin Edwards's claim improperly. Viewing the complaint in the light most favorable to Edwards, and drawing reasonable inferences from the allegations, his complaint states a claim for a "continuing tort" of unconstitutional denial of medical care that began when the defendants learned of his medical needs and failed to provide for them and continued until he was released from jail. *See Lavellee v. Listi*, 611 F.2d 1129, 1132

(5th Cir. 1980)[3] ("[T]he allegation of a failure to provide needed and requested medical attention constitutes a continuing tort, which does not accrue until the date medical attention is provided."). The references in the complaint to the six hours on the date of his release simply indicate the portion of the violation of his rights for which seeks recovery--that is, the six-hour period within the two-year statute of limitations.[4]

_____

3. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

4. Moreover, the only issue before the court now is the issue of qualified immunity, not the statute of limitations. The issues the court must resolve are whether the factual allegations of the complaint are sufficient to state a claim for a constitutional violation, and whether that violation was clearly established at the time of the events in question. The defendants' argument--in contrast--goes to the impact of the statute of limitations on Edwards's claim. That issue is beyond the scope of the qualified-immunity analysis, but the defendants are free to raise it in a new motion.

Turning to the remaining requirements for his claim, the court finds that Edwards has plausibly pleaded that Nurse Dubose was deliberately indifferent to his pain from his leg injury.  Edwards and his family repeatedly informed Dubose of his leg injury and that he needed his prescribed pain medication for his leg.  Edwards's mother even went to the jail and showed Dubose his medical records verifying the need for treatment, as well as his prescriptions and medications for the injury.  The jail's contract physician admonished Dubose on multiple occasions to transport Edwards to his orthopedic surgeon for treatment of his leg, but Dubose ignored the physician's orders.  Edwards experienced intense pain from the injury, and when he complained to her about it, she ridiculed and harassed him.  In spite of her knowledge of his injury and his ordered treatment, Dubose denied him his prescribed pain medication, did not allow him to attend appointments with his orthopedic surgeon or his physical therapist, and called and cancelled his appointments with the surgeon.  In an effort to overcome

the defendants' unwillingness to provide the required care, Edwards's wife made arrangements to pay out of pocket for him to be transported to the orthopedic surgeon, and she and his mother notified Dubose that none of the costs for treatment and medication would be incurred by the jail. Nevertheless, Dubose never provided the prescribed treatment.

These allegations are sufficient to show that Dubose was subjectively aware of a substantial risk of serious harm and that she disregarded that risk with conduct that was more than mere negligence. Unnecessary pain can constitute serious harm. *See McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999) (explaining that "prison officials may violate the Eighth Amendment's commands by failing to treat an inmate's pain" and citing cases); *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1154–55 (6th Cir. 1991) ("a prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering."). Furthermore, a jail employee who knowingly

16

violates a doctor's orders for treatment may be found to be deliberately indifferent. *See Young v. City of Augusta, Ga., Through DeVaney*, 59 F.3d 1160, 1170–71 (11th Cir. 1995) (explaining with regard to the liability of jail employees who provided medication, that if "[the inmate] did not receive medication as prescribed," that could "lead to a finding that her rights were violated."); *see also Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985) (explaining that a plaintiff may establish that deliberately indifference by showing that defendants have "intentionally interfer[ed] with the treatment once prescribed") (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)); *Bingham*, 654 F.3d at 1176. Taking the allegations as true, Dubose knew that there was a substantial risk that Edwards would unnecessarily suffer intense pain from his leg injury were he denied treatment, and she disregarded that risk.  The fact that she ignored the doctor's order to take Edwards to the orthopedic surgeon and belittled and harassed him when

17

he complained of pain makes it plausible that she acted recklessly or worse.

Edwards also seeks to hold Sheriff Abbett and Jail Administrator Jennings liable for the denial of treatment for his leg injury. The court assumes that Edwards seeks to hold them liable on a theory of supervisory liability. "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360-61 (11th Cir. 2003) (citations omitted), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted). A causal connection can exist "when a history of widespread abuse

18

puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so; [or] ... when a supervisor's custom or policy ... result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal citations and quotation marks omitted).

The complaint adequately pleads that Abbett and Jennings knew that Dubose was behaving unlawfully by denying treatment for Edwards's leg injury and failed to stop her from doing so. According to the complaint, Edwards's family members provided Abbett and Jennings with the same documentation of his injury and prescribed treatment that they provided to Dubose. After becoming aware of Dubose's denial of care and mistreatment, Edwards's family informed Abbett and Jennings of the nurse's refusal to follow the contract jail physician's orders to send Edwards to the orthopedic surgeon.

19

Edwards suffered intense pain, insomnia, and hypersomnia as a result of the lack of treatment. The family contacted Abbett and Jennings several times a week to notify them of Edwards's urgent need for pain treatment, and even informed them that the cost of treatment would be covered by Edwards's wife's insurance. In spite of all this, Abbett and Jennings did not have Edwards taken to the orthopedic surgeon or ensure that Dubose provided pain medication or other treatment for his leg injury during the five and half months of his incarceration, and more specifically, during the six hours before his release from jail. These allegations make it plausible that Abbett and Jennings were subjectively aware of a substantial risk that Edwards would suffer serious, unnecessary pain from a lack of treatment for his leg and disregarded that risk with conduct that was more than negligence.

The court now turns to whether the law was clearly established in 2011 that the defendants' denial of treatment for Edwards's leg injury was unconstitutional.

For purposes of qualified immunity, a constitutional right may be clearly established in several different ways: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Hill v. Cundiff*, 797 F.3d 948, 979 (11th Cir. 2015) (quoting *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1291–92 (11th Cir. 2009)) (internal quotation marks omitted). Edwards seeks to travel on the second route, citing multiple cases which establish the broad statements of principle that govern prisoner cases alleging a denial of prescribed medical care for serious medical needs.

There are several statements of general principles in Eleventh Circuit case law, issued prior to September 2011, that clearly established that a jail official's deliberately indifferent failure to provide treatment for

an inmate's serious pain violates the Eighth Amendment. Well before the time of Edwards's incarceration in 2011, "it was clearly established that 'knowledge of the need for medical care and intentional refusal to provide that care constituted deliberate indifference.'" *Harris v. Coweta Cty.*, 21 F.3d 388, 393 (11th Cir. 1994) (quoting *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989)); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 (11th Cir. 1997) ("an official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate."). More specifically, in 1999, the Eleventh Circuit explained, "A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, *cause a prisoner to needlessly suffer the pain resulting from his or her illness.*" *McElligott*, 182 F.3d at 1257 (emphasis added).

Furthermore, the case of *Aldridge v. Montgomery*, 753 F.2d 970 (11th Cir. 1985), made clear that correctional officials may violate the Constitution when they deny pain care ordered by physicians.  In that case, an inmate plaintiff had a one-and-a-half inch cut above his eye sutured at the hospital, and the hospital doctor ordered that the inmate receive icepacks and aspirin for pain upon his return to the jail.  The Eleventh Circuit reversed the district court's entry of a directed verdict for the defendant correctional officers on the claim that they had violated the inmate plaintiff's constitutional rights by failing to provide him with the icepacks and aspirin prescribed by the doctor for pain.  *Id*. at 972-73. The court explained that "[d]eliberate indifference is shown not only by failure to provide prompt attention to the medical needs of a pre-trial detainee, but also by 'intentionally interfering with the treatment once prescribed.'"  *Id*. at 972 (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

"Qualified immunity is a guarantee of fair warning." *Id.*, 182 F.3d at 1260.  Based on the facts pleaded in the complaint, the broad principles noted above, and the *Aldridge* case, no reasonable nurse or correctional officer, knowing that the inmate was in intense pain from a severe leg injury for which he had been prescribed pain medication and other treatment by a physician, and having been informed that the jail's own doctor recommended that the inmate see a specialist for treatment of the injury, could have thought it was constitutional to completely ignore the physicians' orders and deny treatment to the inmate for that pain for five and half months.

The defendants contend that Edwards must show that it was clearly established that denying treatment for five hours and 55 minutes--the length of time he was incarcerated within the statutory limitations period-- was unconstitutional.  As noted earlier, the complaint sets forth a claim that the defendants violated Edwards's rights over the course of his incarceration but seeks to impose liability only for the harm he suffered during the

early morning hours of November 27, 2011--the period within the statute of limitations. Proof of Edward's claim relies in large part on actions and events that took place before that date. The defendants cite no cases that would require the court to ignore those earlier actions and events in identifying whether the defendants' actions violated clearly established law. The defendants' suggested approach, if followed, would improperly cabin the qualified-immunity analysis.

The motion will to dismiss will be denied as to the Edwards's claim that he was unconstitutionally denied treatment for his leg injury.


### 2. Mental-Health Conditions

"[I]t is established that psychiatric needs can constitute serious medical needs and that ... the quality of psychiatric care one receives can be so substantial a deviation from accepted standards as to evidence deliberate indifference to those serious psychiatric needs." *Steele v. Shah*, 87 F.3d 1266, 1269 (11th Cir.

1996). *See also Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir. 2010) (quoting *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004) ("The case law establishes that 'mental health needs are no less serious than physical needs' for purposes of the Eighth Amendment."); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (noting that the "[f]ailure to provide basic psychiatric and mental health care states a claim of deliberate indifference to the serious medical needs of prisoners." (Emphasis added)). Nevertheless, Edwards's claim fails because he has not sufficiently pleaded that the defendants were subjectively aware of a substantial risk of serious harm.

First, there is no indication that the defendants were subjectively aware of a substantial risk of serious harm from denial of Edwards's medication for ADHD. ADHD is "a disorder marked by an ongoing pattern of inattention and/or hyperactivity-impulsivity that interferes with functioning or development." *Attention-Deficit/Hyperactivity Disorder*, National

Institute of Mental Health (Nov. 2, 2020),
https://www.nimh.nih.gov/health/topics/attention-
deficit-hyperactivity-disorder-adhd/index.shtml. While
lack of treatment for ADHD theoretically could place an
inmate at substantial risk of serious harm--for example,
if an inmate were so impulsive and hyperactive that he
kept getting into physical altercations with other
inmates--there is no indication in Edwards's complaint
of such severe symptoms here. Indeed, the complaint
contains no information as to the symptoms Edwards
suffered as a result of his ADHD, let alone that the
defendants were aware of those symptoms and knew that
Edwards was at a substantial risk of serious harm if the
condition were not treated. Accordingly, to the extent
Edwards seeks to hold the defendants liable for the
denial of medication for ADHD, the claim will be
dismissed.

Second, the complaint does not plausibly plead
deliberate indifference to a substantial risk of serious
harm from Edwards's Major Depressive Disorder, primarily

because it does not allege facts showing that he was
denied treatment for the disorder.[5]  The complaint's fact
section contains only one allegation related to Edwards's
depression, stating that Edwards's family and healthcare
providers notified and provided medical documentation to
the defendants of his diagnosis for PTSD, Major
Depressive Disorder, and ADHD, and "of the need for him
to take medications prescribed by his doctors."  Third
Amended Complaint (doc. no. 43) at 3, ¶ 18.  Multiple
other factual allegations mention his other mental-health
conditions but not his depression.  *See id.* at 1, ¶ 3
(stating that defendants were informed of need for
treatment for PTSD); *id.* at 2, ¶ 6 (stating that Edwards's

---

        5.  It is worth noting that it is not clear that
Edwards actually seeks to hold the defendants liable for
denial of treatment of his Major Depressive Disorder.
The complaint's second paragraph clearly states that he
is suing for all harm he suffered due to the defendants'
failure to provide medications for ADHD and PTSD and
other conditions, but fails to mention Major Depressive
Disorder. *See* Third Amended Complaint (doc. no. 43) at
1, ¶ 2.  Nevertheless, because in the section of the
complaint setting out his cause of action, *see* id. at 7,
¶ 46, he seems to indicate otherwise, the court will
address this possible claim.

mother showed the defendants prescriptions and medicines that he was required to take for ADHD and PTSD); *id.* at 4, ¶ 22 (stating that defendants failed to provide medication and sufficient treatment for PTSD and ADHD) & ¶ 27 (stating that defendants were told about need for him to take medications for ADHD and PTSD); *id.* at 7, ¶ 44 (stating the defendants failed to provide plaintiff with medications for ADHD and PTSD on November 27, 2011) & ¶ 45 (stating defendants had a duty to provide treatment for ADHD and PTSD).  The clear implication of these allegations is that the defendants failed to treat only his ADHD and PTSD, not his depression.  It seems evident that, had Edwards meant to convey that the defendants denied him treatment for depression, he would have mentioned it in at least some of these allegations.

Confusion arises from the section of the complaint where he sets forth his one count for violation of the Eighth and Fourteenth Amendments.  There he states that the defendants "failed and/or refused to on numerous occasions . . . provide" him with medication not only for

his PTSD and ADHD, but also for his Major Depressive Disorder. *See* Third Amended complaint (doc. no. 43) at 7, ¶ 46. No other factual allegations in the remainder of the complaint support this statement, which is otherwise consistent with the rest of the complaint. Accordingly, the court finds that Edwards has not sufficiently pleaded that the defendants failed to treat his depression. And, because Edwards has not pleaded that the defendants denied him care for his depression, he also has not pleaded that they were deliberately indifferent to a substantial risk of serious harm posed by failure to treat the condition. His possible claim for denial of such treatment must be dismissed.

Edwards's claim for denial of treatment for PTSD is also insufficiently pleaded. PTSD undoubtedly can be a serious medical need. *See, e.g., Brannan v. Owens*, No. 5:13-CV-454 (MTT), 2014 WL 840018, at *3 (M.D. Ga. Mar. 4, 2014) (Treadwell, J.) (finding that prisoner could state a claim for Eighth Amendment violation due to denial of treatment for PTSD and other mental-health

conditions).   People diagnosed with PTSD suffer from a variety of symptoms, including re-experiencing a traumatic event through flashbacks or dreams, avoidance of thoughts or reminders of the event, arousal and reactivity symptoms such as feeling tense, being easily startled, difficulty sleeping, and angry outbursts, and cognition and mood symptoms such as negative thoughts about oneself or the world, distorted feelings of guilt or blame, and loss of interest in enjoyable activities. *See Post-Traumatic Stress Disorder*, National Institute of Mental Health (Nov. 1, 2020), https://www.nimh.nih.gov/health/topics/post-traumatic-stress-disorder-ptsd/index.shtml.   Clearly, treatment for PTSD may in many circumstances be vitally important for prisoners and necessary to avert serious psychological pain, depending on the particular symptoms a prisoner experiences.

Here, however, the complaint fails to plausibly plead that Edwards's PTSD was a serious medical condition because the allegations do not make clear that his PTSD,

31

if left unattended, posed a substantial risk of serious harm. *See Hill*, 40 F.3d at 1187. The complaint contains no discussion of the severity of Edwards's PTSD or of the symptoms he experienced as a result of it. Without some indication that Edwards regularly suffered painful symptoms of PTSD, the complaint does not sufficiently state a claim for a violation of the Eighth Amendment.

### 3. Sleep Apnea

Finally, the court finds that Edwards has failed to state a constitutional violation based on the temporary denial of a functioning machine to treat his sleep apnea. This is so because Edwards has not sufficiently pleaded that any of the defendants were deliberately indifferent to his need for a CPAP machine for his sleep apnea.

According to the complaint, Nurse Dubose initially allowed Edwards the use of a CPAP machine, then somehow broke it and failed to replace or fix it for some period of time afterwards. The problem is that the complaint does not make sufficiently clear when during his

months-long incarceration this occurred or, relatedly, how long Dubose allowed Edwards to go without the machine. The complaint simply says that he went "weeks" without a functioning machine. As noted above, the court must draw all reasonable inferences from the facts in the complaint in Edwards's favor, but it would not be reasonable for the court to guess at the number of weeks he meant.[6] This is a problem because the length of time he went without the CPAP machine is legally significant.

To be held liable for a denial of medical care, a defendant must have acted with more than negligence. Without any indication of how long she left Edwards without a functioning machine, the complaint does not plausibly plead that Dubose acted with more than negligence. Had Edwards gone for months without a replacement machine, the inference that Dubose had a sufficiently culpable state of mind would be far stronger. But a couple weeks without the machine is much

---

6. That said, it seems likely that, had he gone a month or more without the machine, he would have said so instead of saying "weeks."

more open to innocent possibilities--it could have taken that amount of time just to get a replacement machine, or to get the machine repaired.  Of course, if the complaint contained facts that showed that Dubose simply chose not to provide a functioning CPAP machine--such as comments to that effect--then that could support a finding of deliberate indifference at this stage.  But without a better indication of how long Edwards went without a functioning machine, and absent specific allegations reflecting Dubose's motivation for not fixing or replacing the machine sooner, the complaint does not adequately plead that Dubose acted with deliberate indifference.

In addition, it is not clear that the denial of a treatment for sleep apnea for two or three weeks would create a substantial risk of serious harm.  While Edwards alleges that the lack of a CPAP machine caused him to choke and gag, kept him from sleeping, and made him extremely tired during the day, many risks from sleep apnea appear to be longer term: it increases the risk of

several serious medical conditions, such as cancer, hypertension, and Type II diabetes. *See Sleep Apnea*, National Heart, Lung, and Blood Institute, National Institutes of Health (Nov. 1, 2020), https://www.nhlbi.nih.gov/health-topics/sleep-apnea. Had the defendants denied him any treatment for the five and a half months he was incarcerated, the complaint might very well state a constitutional violation. However, with the possibility that he was without his machine for only two weeks, the complaint does not plausibly plead that the denial of treatment for that period created a substantial risk of serious harm. Edwards's claim stemming from the temporary denial of treatment for his sleep apnea will be dismissed.

An appropriate order will be entered.

DONE, this the 2nd day of November, 2020.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE