IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

| | | |
|---|---|---|
| MARCUS EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 3:13cv871-MHT |
| | ) | (WO) |
| SHERIFF JIMMY ABBETT | ) | |
| (in his individual | ) | |
| capacity), et al., | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

Pursuant to 42 U.S.C. § 1983, plaintiff Marcus
Edwards brought this lawsuit stemming from his
incarceration in the Tallapoosa County Jail, asserting
that the defendants violated his Eighth and Fourteenth
Amendment rights by denying him a certain pain medication
and visits to an orthopedic specialist for a leg injury.
The defendants are former Tallapoosa County Sheriff Jimmy
Abbett, current Jail Administrator Blake Jennings, and
former Chief Nurse Cathy Dubose.  They are sued in their
individual capacities.  This court has jurisdiction
pursuant to both 28 U.S.C. § 1331 (federal question) and

§ 1343 (civil rights).  The court previously granted a motion to dismiss certain claims, but allowed the current claims to proceed.  *See Edwards v. Abbett*, No. 3:13CV871-MHT, 2020 WL 6395454 (M.D. Ala. Nov. 2, 2020). The case is now before this court on the defendants' motion for summary judgment.  For the reasons that follow, the motion will be granted.

## I.   SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To determine whether a genuine factual dispute exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, conclusory assertions unsupported by evidence "are insufficient to

withstand summary judgment." *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997), *abrogated on other grounds by Lewis v. City of Union City*, 918 F.3d 1213 (11th Cir. 2019) (en banc).  In general, summary judgment is appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587.

## II.  BACKGROUND

This case stems from Edwards's incarceration in the Tallapoosa County Jail from June to November 2011 on a misdemeanor probation violation, and the alleged denial of the pain medication Lortab and appointments with an orthopedic specialist for a leg injury during that time. Viewing the evidence in the light most favorable to Edwards, the facts are as follows.

In 2010, Edwards had suffered a severe leg injury in an automobile accident that required two surgeries in May and December that year.  At the time he was incarcerated

in June 2011, he was still recovering from the injury. He wore a brace on his leg and experienced serious pain in his leg throughout his incarceration.

Sheriff Abbett was responsible for the overall operation of and setting policy for the county jail. Jail Administrator Jennings was responsible for the daily operations of the jail. Nurse Dubose was responsible for providing medical care to inmates in the jail, in concert with the jail's physician, who worked on a contract and came to the jail every week or two.

On June 7, 2011, Edwards was incarcerated in the Tallapoosa County Jail. At intake, Edwards reported that he was experiencing pain in his right leg and that he had a rod in his leg. *See* Jail Med. Records (Doc. 71-11) at 2. His family brought his prescription medications to the jail, including Lortab. However, he never received Lortab during his incarceration. Edwards was prescribed other pain killers during almost all of his incarceration.

**4**

Sheriff Abbett had a policy of generally not allowing inmates to take narcotic medications in the jail. However, inmates could receive narcotic medication if the jail's physician determined it to be medically necessary. Indeed, the jail's physician prescribed Edwards a narcotic pain killer at one point during his incarceration.

Edwards frequently complained to Nurse Dubose about the pain in his leg. Edwards spoke with his family frequently during his incarceration and complained to his family about his medical concerns, which included his leg pain. Edwards's mother and other family members spoke with Abbett, Jennings, and Dubose repeatedly about his need to see his orthopedic surgeon for his leg. Abbett promised Edwards's mother that he would have Edwards taken to an appointment with his orthopedic surgeon. Jennings and Dubose told Edwards's mother that he was receiving the medication he was supposed to receive.

Two days after entering the jail, Dubose ordered that Edwards receive Tylenol for pain.  Later in June, she switched him to another, apparently stronger, pain medication and a muscle relaxer.  On July 7, he met the jail physician, who prescribed him a narcotic medication for chronic pain, an antibiotic, and a heartburn medication.  Two days later, Edwards wrote a note to Dubose explaining that the new medications were making him ill and that he would simply deal with his pain without the medications.

In late July, at the request of Edwards's family, an attorney sent a letter to Abbett explaining, "[Edwards] ... is suffering from [a] serious automobile accident wherein his right femur was broken, and he is slowly recovering from that injury, but it will require doctor visits to his orthopaedic surgeon."  (Doc. 71-11) at 7. A handwritten note on the upper corner of the letter, signed with the initials "JHA," (presumably those of defendant Jimmy Abbett) says, "Please review & forward

6

to Blake J & Nurse Dubose." *Id*. A couple days later, the attorney sent another letter to Abbett informing him that Edwards had an appointment scheduled with his orthopedic surgeon on August 5. *See* Jail Med. Records (Doc. 71-11) at 9. A handwritten note again appears in the upper corner: "David[:] FYI & TD Blake Jennings." *Id*.

The day before the scheduled orthopedic appointment, Edwards saw the jail physician and Dubose. Dubose told Edwards that, if the jail physician found it necessary, he would send him to an orthopedic specialist that came to the town where the jail was located. According to Edwards, also at this appointment, the jail physician prescribed him Lortab, but Dubose told the doctor Edwards could not have the drug in the jail. After the appointment, on a sheet labelled "Physician's Orders" in Edwards's medical file, the jail physician wrote an order for several medications, including Tylenol 650, and requested that Dubose obtain medical records from

Edwards's orthopedic surgeon.  *See* Jail Med. Records
(Doc. 71-11) at 67.  He did not write an order for Lortab
or order him to be taken to the appointment with the
orthopedic surgeon.  Dubose cancelled the appointment
with the surgeon.

The next day, Dubose obtained Edwards's medical
records from the surgeon.  These records reflect that
Edwards's last visit to the orthopedic surgeon had been
about four months before his incarceration.  The
surgeon's notes of that visit state:

> "History: Follow up on distal femur fracture and
> knee arthroscopy. Patient doing well. No
> mechanical pain. Only occasional swelling.

> "Exam: Gait normal. Full range of motion knee.
> Trace Effusion.

> "Plan: Activities as tolerated.

> "Impression: Osteoarthritis, unspec generalized
> or localized, lower leg".

Jail Med. Records (Doc. 71-11) at 43.  The surgeon did
not indicate that any medications were prescribed or that
any follow-up visits were required.  After receipt of

8

these records, the jail physician did not refer Edwards
to an orthopedic specialist and prescribed Edwards only
Tylenol 650 mg and Tylenol PM for the remainder of his
incarceration.

Edwards was released from jail on November 27, 2011,
just under six months after he was incarcerated.


## III.  DISCUSSION

Edwards contends that the defendants violated his
Eighth Amendment rights by denying him the medication
Lortab and appointments with his orthopedic surgeon for
his leg pain.  The defendants contend that they are
protected by qualified immunity and that Edwards has
failed to meet the Eighth Amendment standard.

"The doctrine of qualified immunity protects
government officials 'from liability for civil damages
insofar as their conduct does not violate clearly
established statutory or constitutional rights of which
a reasonable person would have known.'"  *Pearson v.*

9

*Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  A defendant who invokes qualified immunity has the initial burden of showing that he or she "was acting within the scope of his or her discretionary authority when the challenged action occurred."   *Patel v. City of Madison, Alabama*, 959 F.3d 1330, 1338 (11th Cir. 2020) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013)).  "The term 'discretionary authority' 'include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority.'"  *Id.* (quoting *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994)).  Once the defendants establish that they were acting within their discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

10

Here, there is no dispute that the defendants were acting within their discretionary authority. Thus, Edwards has the burden to prove that qualified immunity is inappropriate. To do so, he must show both that the defendants violated his constitutional rights and that, when the defendants acted, clearly established law made clear that their actions were unconstitutional.

As discussed below, Edwards has not presented sufficient evidence for a jury to find that the defendants violated his constitutional rights, so summary judgment must be granted.

## A. The Eighth Amendment Standard

To prove an Eighth Amendment claim for denial of medical care, a plaintiff show "both an objectively serious medical need and that a Defendant acted with deliberate indifference to that need." *Harper v. Lawrence Cty., Ala.*, 592 F.3d 1227, 1234 (11th Cir. 2010) (quoting *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th

11

Cir. 2008) (internal quotation marks omitted).  A medical need is objectively 'serious' if it "has been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)(overruled in part on other grounds by *Hope v. Pelzer*, 536 U.S. 730, 739 n. 9 (2002)).  In addition, the medical need must be "one that, if left unattended, 'pos[es] a substantial risk of serious harm.'"  *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)).

To satisfy the deliberate indifference requirement, a plaintiff must prove the defendant's "(1) subjective knowledge of a risk of serious harm... [and] (2) disregard of that risk ... (3) by conduct that is more than mere negligence." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (quoting *Brown v. Johnson*, 387 F.3d

12

1344, 1351 (11th Cir. 2004)).  "[K]nowledge of the need
for medical care and intentional refusal to provide that
care constitute[s] deliberate indifference." *Harris v.*
*Coweta Cty.*, 21 F.3d 388, 393 (11th Cir. 1994).


## B. Serious Medical Need

The court previously found that Edwards pleaded a
serious medical need.  *See Edwards*, 2020 WL 6395454, at
*3.  Now with the benefit of evidence, the court again
finds that Edwards has met the standard for showing a
serious medical need.  He testified that the pain in his
knee was severe throughout his incarceration.
Unnecessary pain can constitute serious harm.  *See*
*McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999)
(explaining that "prison officials may violate the Eighth
Amendment's commands by failing to treat an inmate's
pain" and citing cases); *see also Boretti v. Wiscomb*, 930
F.2d 1150, 1154-55 (6th Cir. 1991) ("a prisoner who
suffers pain needlessly when relief is readily available

13

has a cause of action against those whose deliberate indifference is the cause of his suffering."). Edwards's pain was severe enough that the jail physician prescribed him narcotic medication for the pain and continued to provide him other painkilling medicine after he rejected the narcotic. This is sufficient evidence for a jury to find a serious medical need under the Eighth Amendment standard.

### C. Deliberate Indifference

The court next turns to whether Edwards has met the subjective prong of the Eighth Amendment standard. For ease of analysis, the court will first discuss Edwards's claim that the defendants violated his rights by denying him an appointment with his orthopedic surgeon, then will turn to his claim for denial of Lortab.

### 1. Denial of Specialist Treatment

To survive summary judgment, Edwards must present

sufficient evidence for a jury to find that the defendants knew that he faced a substantial risk of serious harm if he were not taken to an orthopedic surgeon, and that they ignored that risk with an intent worse than negligence.  He has not met that burden.  The court will discuss the evidence against Sheriff Abbett and Jail Administrator Jennings first, then turn to Nurse Dubose.

There is sufficient evidence in the record to conclude that Abbett and Jennings were aware that Edwards was recovering from a serious leg injury and was experiencing serious pain, and that he had an appointment with his orthopedic surgeon.  Edwards's mother informed Abbett and Jennings about her son's orthopedic appointments, and Abbett received letters from Edwards's attorney notifying him of the serious leg injury and his appointment with his orthopedic surgeon and directed that the letters be shared with Jennings.

However, this knowledge is not sufficient to prove

deliberate indifference.  Abbett and Jennings were under no constitutional obligation to keep Edwards's appointments with his free-world physician.  They had to provide him with access to adequate health care for his serious medical needs, but not to the provider of his choice at the time of his choice.

Moreover, there is no evidence that they ignored a substantial risk of serious harm to Edwards with an intent worse than negligence.  Edwards has not presented any evidence that Abbett or Jennings directed the jail physician to deny him an appointment with his orthopedic surgeon.  Abbett and Jennings said that they relied upon the jail physician to decide what medical care inmates needed, which they were entitled to do.  If the physician felt that a referral to an outside specialist was needed, he could make the referral.  The physician saw Edwards and did not make a referral.

Under the Eighth Amendment, correctional officials have no responsibility "to intervene in treatment

16

decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong." *Sanderson v. Marshall*, No. 2:10 CV-878-SRW, 2013 WL 4763525, at *7 (M.D. Ala. Sept. 4, 2013) (Walker, M.J.) (quoting *Cameron v. Allen*, 525 F. Supp. 2d 1302, 1307 (M.D. Ala. 2007) (Thompson, J) (adopting recommendation)). Here, there was no evidence that Abbett and Jennings knew the medical staff would deny Edwards a needed visit to an outside specialist, or that they were on notice of a history of widespread abuse by the jail medical staff in denying access to outside specialists. *Compare Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). Accordingly, there is no basis upon which to hold them liable on the orthopedic-specialist claim.

Edwards has also failed to show that Dubose was deliberately indifferent on this issue. Dubose attested that she lacked the authority to refer an inmate to a

specialist, which only the jail's physician could do,[1] and Edwards has not presented any evidence to the contrary.  Dubose cannot be held liable for not doing something she was not authorized to do.  And, to the extent he contends that Dubose should be held liable because she cancelled his appointment with his orthopedic surgeon, it was the jail physician's decision--not Dubose's call cancelling the appointment--that prevented him from seeing the surgeon.

Moreover, there is no evidence that Dubose failed to follow the physician's orders.  The evidence suggests that the jail physician considered sending Edwards to an orthopedic specialist but wanted to look at records from his orthopedic surgeon first.  In Dubose's notes from Edwards's August 4 appointment with the jail physician, she explained:

"Mr Edwards Ortho doctor does not come to Dadeville but there is an Ortho doctor that comes to Dadeville. I told Mr Edwards if Dr Schuster

_____

1. She was authorized to decide to send an inmate for care outside the jail only in an emergency.

> felt it necessary to see him and ordered it, We
> would take him to see him. Dr. Schuster did not
> order it, therefore he doesn't think it
> necessary at this time. He did write an order
> for me to get his records from his ortho Doctor
> and I will today."

Jail Med. Records (Doc. 71-11) at 5. Dubose obtained the records the next day.

The records showed that Edwards's last appointment had been over four months prior to his incarceration, that he had osteoarthritis in his knee, and that no follow-up treatment was ordered. The jail physician interpreted the record of Edwards's final visit with the surgeon as showing that the orthopedic surgeon "felt like [Edwards] had reached maximum medical improvement at that point and dismissed him, basically, to full activities as tolerated." Schuster Dep. (Doc. 71-8) at 30:13-15. He further testified that he did not see any reason that he would have referred Edwards to an orthopedic specialist based on that record, *id*. at 30:16-21, and that he did not believe Edwards needed to see his orthopedic surgeon emergently, *id*. at 31:2-16.

19

Particularly given that she carried out the jail physician's order to obtain the orthopedic records, Dubose cannot be held liable for his decision.

Finally, and perhaps most importantly, Edwards did not present any expert testimony that, based on the condition of his leg, he should have been sent to an orthopedic specialist. But without such testimony, no reasonable jury could find that the denial of a visit to such a specialist amounted to deliberate indifference. There is simply no basis to hold any of the defendants liable for the denial of the specialist's visit.

### 2. Denial of Lortab

The court next turns to Edwards's claim that the defendants violated his rights by denying him the opiate medication Lortab for his leg pain. To survive summary judgment, Edwards must present sufficient evidence from which a jury could determine that each defendant was deliberately indifferent. This he has failed to do.

As they were not directly involved in the provision of medical care, Sheriff Abbett and Jail Administrator Jennings can be held responsible for the denial of Lortab to Edwards only if they personally participated in denying the medication or there is a causal relationship between their actions and the denial of the medication. *See Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir. 1990). Edwards has presented no evidence that Abbett or Jennings personally participated in the decision to deny him Lortab, that they conspired with the physician or Dubose to deny him Lortab, or that they knew based on a widespread history of abuse that the medical providers were likely to deny him medication that he genuinely needed.

Edwards argues that the defendants are liable because Abbett and Jennings implemented a "no narcotics" policy at the jail, which he contends led to the denial of his Lortab. However, evidence in the record shows that the narcotics policy was not set in stone. The jail physician

had the authority to prescribe narcotic medications to inmates when needed, and actually prescribed Edwards a narcotic pain reliever for his leg pain.

Edwards seeks to hold Dubose liable on a different theory: that she interfered with the provision of prescribed medication.  A jail employee who knowingly violates a doctor's orders for treatment may be found to be deliberately indifferent.  *See Young v. City of Augusta, Ga., Through DeVaney*, 59 F.3d 1160, 1170–71 (11th Cir. 1995) (explaining with regard to the liability of jail employees who provided medication, that if the inmate "did not receive medication as prescribed," that could "lead to a finding that her rights were violated.").  Edwards contends that Dubose denied him access to previously prescribed Lortab delivered for him to the jail by a family member, and that she later prevented him from receiving Lortab that the jail physician prescribed him.

The record contains evidence--albeit weak--that a

family member brought Lortab to the jail for him shortly
after he was incarcerated.  But, importantly, the record
is devoid of any medical evidence or expert testimony
that Edwards actually needed Lortab when he entered the
jail.  Edwards has not submitted any medical or
pharmaceutical records showing that he had an active
prescription for Lortab at the time of his incarceration.
The medical records from Edwards's orthopedic
surgeon--whom Edwards claimed was the source of his
Lortab prescription--show that the surgeon had last
prescribed Lortab for Edwards in October 2010--about
eight months before his incarceration--and that he only
prescribed 30 pills at that time, which presumably would
have run out well before June 2011.  And when the jail
physician saw Edwards in July, he did not determine that
he needed Lortab, but instead prescribed him a different,
milder narcotic medication, Ultram, that he found to be
more appropriate.

    Without any medical or expert evidence that he needed

Lortab, the court is left with nothing but Edwards's own opinion that he should have received it.  A jury cannot find that Dubose was deliberately indifferent on that basis.  *See Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) ("a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [does not] support a claim of cruel and unusual punishment.") (citing *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Furthermore, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *McElligott*, 182 F.3d at 1255 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  While a jail medical provider who *ignores* an inmate's serious pain can be found deliberately indifferent to a substantial risk of serious harm, *see id.* at 1257, Dubose did not ignore Edwards's pain.  The evidence shows that

24

on June 9, two days after he entered the jail, Dubose
began giving Edwards Tylenol twice a day for pain.  *See*
Jail Med. Records (Doc. 71-11) at 10, 14.  On June 28,
Dubose met with Edwards and made an entry in the progress
notes describing Edwards's leg injury and stating he had
been on Tylenol for pain and reported taking Lortab and
Flexeril at home.  *Id*. at 11.  She prescribed him
Ibuprofen 600 and Robaxin, which, according to the jail
physician, are substitutes for the Lortab and Flexeril
that are on the jail's formulary.  *See* Schuster Depo. 71-
8 at 20:11-23.   She continued providing these
medications until July 7, when Edwards met with the jail
physician, who prescribed him a narcotic medication.  *See*
Jail Med. Records (Doc. 71-11) at 12, 14.  Based on these
facts, while she may have denied him Lortab, Dubose was
not deliberately indifferent to Edwards's pain.

Edwards also seeks to hold Dubose liable for refusing
to provide him Lortab that he claims the jail physician
prescribed him.  Edwards presented testimony that during

25

an August doctor's visit, the physician prescribed him Lortab, but Dubose told him that Edwards could not have that medication in the jail.[2]

The main problem with this claim is that there is simply no proof that the jail physician actually prescribed Lortab.  While he may have told Edwards he would prescribe him Lortab, he clearly did not follow through.  The prescriptions provided to Edwards in the jail are listed on forms in his jail medical record labelled "physician's orders."  On August 4--the day on which Edwards claims to have been prescribed Lortab--Dubose and the jail physician made many entries in the both the progress notes and the physician's orders sections of Edwards's jail medical records.  *See* Jail Med. Records (Doc. 71-11) at 4-5, 67, 69-70.  Nowhere is Lortab mentioned.  The doctor's progress note includes information about Edwards's knee pain, followed by a note that he would not take an antibiotic due to nausea.  *See*

---

2.  The court assumes, without deciding, that Edwards's statement does not constitute hearsay.

Jail Med. Records (Doc. 71-11) at 70. In the physician orders section, **where he recorded prescriptions for Dubose to implement**, the doctor prescribed Tylenol 650 and ordered Dubose to obtain the records from Edwards's orthopedic surgeon. *See* Jail Med. Records (Doc. 71-11) at 67. In sum, there is no documentation of a prescription for Lortab. No "rational trier of fact" could conclude that the jail physician entered a prescription for Lortab based on this record. *Matsushita*, 475 U.S. at 587. And while the physician may have changed his mind about prescribing Lortab based on Dubose's statement, that statement does not make her liable for his decision.

***

The court does not doubt that Edwards suffered during his incarceration, and the record does contain evidence of possible negligence in the care Edwards received. But negligence is not sufficient for liability under the

Eighth Amendment.   Because he has failed to present evidence meeting the deliberate-indifference standard, summary judgment will be granted.

An appropriate judgment will be entered.

DONE, this the 20th day of August, 2021.

        /s/ Myron H. Thompson        
UNITED STATES DISTRICT JUDGE

28